UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA,**

v.

**JUSTIN HOBBIE,**

Defendant.

3:19-CR-00285 (TJM)

---

### DEFENDANT JUSTIN HOBBIE'S SENTENCING MEMORANDUM AND MOTION FOR A NON-GUIDELINE SENTENCE

Justin Hobbie, by and through his attorney, Kimberly M. Zimmer, respectfully submits this Sentencing Memorandum in connection with his Sentencing currently scheduled for February 26, 2020. For the reasons that follow, it is respectfully submitted that a "fair and just" sentence for Justin Hobbie, that is, one that is "sufficient, but not greater than necessary to comply with the basic aims of sentencing," is the statutory mandatory minimum sentence of fifteen years imprisonment. Those reasons include, among others, the fact that other than the instant offenses, Justin Hobbie has lived a completely law-abiding life; has made substantial contributions to his community; is remorseful and has accepted full responsibility for his conduct; and it is not likely that he will recidivate.

### INTRODUCTION

In August 22, 2019, Justin Hobbie appeared before Your Honor and entered a guilty plea to a Three-Count Criminal Information charging him with Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) and (e). *See* Presentence Investigation Report dated January 15, 2020 ("PSR") at ¶1. Justin Hobbie was arrested on December 7, 2018, waived his right to an immediate detention hearing, and has remained incarcerated since that time. *See* PSR at ¶4.

## THE ADVISORY SENTENCING GUIDELINE CALCULATION

After application of the *advisory* Sentencing Guidelines, the Probation Department determined that the total offense level for each of the alleged victims was 38. Application of the grouping rules to both the counts of conviction and the pseudo-counts then resulted in a combined adjusted offense level of 43. *See* PSR at ¶83. Ultimately, after a three-level decrease in the offense level for Acceptance of Responsibility, a five-level increase in the offense level pursuant to U.S.S.G. § 4B1.5(b)(1), and then another adjustment in the offense level, the Probation Department determined Justin Hobbie's total offense level was 43. *See* PSR at ¶¶87-89. With a Criminal History Category of I, the *advisory* sentencing guidelines sentence for Justin Hobbie is life, as it is for almost every individual charged with this type of crime regardless of the individual facts and circumstances. *See* PSR at ¶134. Because the statutory maximum sentence authorized by law is 30 years for each count of conviction, the *advisory* sentencing guidelines sentence for Justin Hobbie is 90 years (or 1,080 months) imprisonment. *See id.*

## MOTION FOR NON-GUIDELINE SENTENCE

Although the Court is required to consider the *advisory* sentencing guideline range and it is expected that the Government will recommend that Justin Hobbie be sentenced to the *advisory* guideline sentence, for many reasons, the *advisory* sentencing guideline upon which the range is based is not an indication of a *reasonable* or *just* sentence for Justin Hobbie.

For years now, the Second Circuit has taken direct aim at unduly harsh sentences in child pornography based upon a guideline that was created without empirical and rational consideration of the specific offense characteristics, the offense conduct, the sentences produced, and their relationship to culpability. *See United States v. Dorvee,* 616 F.3d. 174, 184-186 (2d Cir. 2010) and *United States v. Jenkins,* 854 F.3d 181, 188-190 (2d Cir. 2017). Arguably, the currently

applicable guideline also results in extreme advisory sentences without a foundation in the rational and historical assessment of sentencing data undermining the reasonableness of the advisory guideline sentence produced from the guideline's application and its lack of relation to culpability. Encouraging a critical look at the Sentencing Guidelines in this area, the Second Circuit initially cited Section § 3553(a)'s parsimony clause, emphasized the district court's broad discretion in sentencing, and criticized Congress' role in directly amending certain sentencing guidelines without empirical evidence to do so. *See United States v. Dorvee,* 616 F.3d. 174, 184 (2d Cir. 2010); *see also United States v. Chow*, 441 Fed. Appx. 44, 2011 WL 5829616 (2d Cir. 2011) ("*Dorvee* recognizes district courts' post-Booker authority to 'vary from the Guidelines range based solely on a policy disagreement with the Guidelines,' and encourages courts to take seriously that discretion 'in fashioning sentences under § 2G2.2' for child pornography defendants."); *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) ("We criticized the child pornography Guideline in *Dorvee* because Congress ignored the Commission and directly amended the Guideline, which had the effect of 'eviscerat[ing] the fundamental statutory requirement in § 3553(a) that district courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant"'").

More recently, in *Jenkins*, 854 F.3d 181, 188-190 (2d Cir. 2017), the Second Circuit found the sentence in a child pornography case "shockingly high," and serving "no valid public purpose." Reiterating and emphasizing *Dorvee*'s central holding that district courts are required to conduct an independent, thorough, and individualized analysis of the § 3553(a) sentencing factors, the Second Circuit made it unmistakably clear that although district courts are confined by certain statutory mandatory minimums, they are not confined by sentencing guidelines that have no correlation to reality. Instead, as in every other area of federal criminal sentencing, district courts

are urged to consider each individual defendant and the offense conduct on a spectrum, based upon the district court's informed experience. *See Jenkins*, 854 F.3d at 188-190.

Ironically, in dicta in *Jenkins*, the Second Circuit got to the heart of the issue, when it stated:

> Additional months in prison are not simply numbers. Those months are exceptionally severe consequences for the incarcerated individual. They also have consequences both for society which bears the direct and indirect costs of incarceration and for the administration of justice which must be at its best when, as here, the stakes are at their highest. *Jenkins*, 854 F.3d at 193.

Perhaps it is because this type of conduct, even with all its variations and differing degrees of harm, is so difficult to look at, or maybe it is because of the severe statutory mandatory minimums that arguably were intended for crimes different than those charged even though technically the statutory elements are met, but the lengthy prison sentences imposed in these kinds of cases stand out in a system that otherwise does consider conduct on a spectrum based upon an individual's past and the nature of the conduct compared to the conduct of others. As the Second Circuit aptly noted in *Jenkins*, the stakes are at their highest in these cases, where we are literally talking about people's lives.

As a forty-two-year old father of two young children, the stakes for Justin Hobbie are incredibly high. Justin Hobbie's conduct was undoubtedly wrong. Apart from that conduct, however, Justin Hobbie has lived a life of hard work, community service, and has never committed any crime. As will be discussed more fully below, he does not present any future danger to society, can be fully rehabilitated, and is not likely to reoffend. For these and other reasons, it is respectfully submitted that a sentence greater than fifteen years imprisonment is much more than is required to meet the basic aims of sentencing and would be substantively unreasonable.

I.  **Section 3553(a) (1) – Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

   A. **History and Characteristics of Justin Hobbie**

Justin Hobbie is a forty-two-year-old son, father, and brother. He was born in Oneonta, New York and adopted by Edward and Connie Hobbie when he was just eleven months old. *See* PSR at ¶97. Mr. and Mrs. Hobbie raised Justin and his older sister Maggee in Fly Creek, New York, a rural area near Cooperstown. *See* PSR at ¶¶97-99. He spent most of his life in the Cooperstown area, leaving only to attend college in Cortland, New York, and later to spend some summers in either Readfield, Maine, or on Cape Cod, Massachusetts with family members. *See* PSR at ¶¶100-101.

Justin Hobbie grew up in a caring home and has close family relationships. *See* PSR at ¶99. He attended school in the Cooperstown Central School District, where he was actively involved in several clubs and activities and excelled in sports. *See* PSR at ¶¶99, 114. He later went on to the State University of New York College at Cortland, graduating with a Bachelor's Degree in Physical Education and then a Master's Degree in Health Education. *See* PSR at ¶¶100, 115.

In 2005, Justin Hobbie married Stefanie Kase and together they have two children, a daughter, who is now nine years old, and a son, who is now five years old. *See* PSR at ¶¶103-4. Justin Hobbie was a very involved parent who worked very hard to support his family. Justin Hobbie was always very present in his children's lives, and when school was out of session for the summer, he was able to spend even more time with them. *See* PSR at ¶123. Justin Hobbie enjoyed including his children in outdoor activities at their rural home, such as gardening with them and teaching them to tend to the family's chickens. He relayed that the best part of his day was family story time in the evenings. His children were and are his life and he suffers greatly for any and all

5

pain he has caused them. Since his arrest on these charges, Ms. Kase has divorced Justin Hobbie and moved to Pennsylvania with their children. *See* PSR at ¶¶103-4. The fact that he has not had any contact with his children since his arrest has been devastating and soul-crushing for Justin Hobbie. At this point, his biggest hope is that he will one day have the opportunity to repair his relationship with the two most important people in his life. *See* PSR at ¶38.

The majority of Justin Hobbie's career as an educator has been at the Cooperstown Junior/Senior High School, where he worked for approximately fourteen years up to the time of his arrest. *See* PSR at ¶122. At the time of his arrest, he was also enrolled in an online Master's Degree program through Canisius College, seeking to earn in advanced degree in School Administration. *See* PSR at ¶117.

Although some might describe Justin Hobbie's life as a husband, father, and son, as relatively normal and typical, his contributions to his community were anything but typical. In addition to his many interests (scuba diving, rock climbing, ropes course instruction, CPR/First Aid instruction, archery instruction, and sailing instruction), and his love of the outdoors (hunting, camping, gardening, beekeeping, and producing maple syrup), Justin Hobbie also has an extensive history of volunteer work. *See* PSR at ¶118. He became certified as an Emergency Medical Technician when he was in college, and served his community as a volunteer EMT and firefighter up to the time of his arrest. *See* PSR at ¶¶119, 124. Over the years, Justin Hobbie responded to hundreds of emergency calls. His commitment to his volunteer work was so strong and complete that he decided to limit his own alcohol consumption to special occasions a few times a year so that he would be available to respond fully if an emergency occurred. *See* PSR at ¶113. He also served as the squad captain for the Springfield Fire Department, overseeing other EMTs, scheduling issues, and grant-writing. *See* PSR at ¶124.

Several friends and family members relate that in 2016, a Cooperstown student collapsed during a track meet, and Justin Hobbie was one of the first responders. Although that young student suffered a major medical incident, she made a full recovery. *See* article, "Cooperstown senior track standout recovering after collapse," attached hereto as Exhibit 1.

Character letters submitted by friends and relatives of Justin Hobbie detail many other examples of his selflessness and community involvement, including assisting local senior citizens with various tasks, sharing his knowledge of emergency medicine skills, running a beekeeping informational booth at Earth Day celebrations, tutoring inmates at Cayuga County Jail, and overall being a highly thought of and supportive family man and community member.[1] In addition to the various groups and sports that Justin Hobbie helped to run and organize in the Cooperstown Central School District, he could be enlisted to support students in the organization of charitable events, such as the Soles to Share Shoe Drive. *See* article, "CCS group seeks more Soles to Share," attached hereto as Exhibit 2.

The PSR accurately sets forth additional details regarding Justin's background, family, and other personal circumstances.

### B. Nature and Circumstances of the Offense

The offense conduct, which is not disputed, is set forth in the PSR. It is also not disputed that Justin Hobbie has fully accepted responsibility for his conduct, which he has described as "reprehensible." *See* PSR at ¶¶36-38.

Nothing about a discussion of the nature and circumstances of the offense conduct is to minimize Justin Hobbie's conduct or the harm, upset, anxiety, and anger that his conduct has

---

[1] Letters of support will be provided to the Court, the Government, and the Probation Department under separate cover.

7

caused the victims. As the Court knows, however, such a discussion is necessary to place Justin Hobbie's conduct in context with other sexual exploitation cases and offenders.

First, and most importantly, Justin Hobbie did not have any physical contact with any of his victims, nor did he inappropriately touch or engage in any such conduct with a child. Nevertheless, Justin Hobbie faces a statutory mandatory minimum sentence of fifteen years imprisonment.

The United States Sentencing Guidelines Commission collects and analyzes the sentencing data and has produced a document entitled Quick Facts Sentence Analysis for Sexual Abuse Cases from FY 2018, which is Attached hereto as Exhibit 3.[2] This fact sheet shows that individuals convicted of far more egregious hands-on or attempted hands-on conduct receive significantly lesser sentences than the statutory mandatory minimum sentence for offenders charged with production of child pornography. Specifically, the average sentences received by individuals charged and convicted with travel for sex with a minor, abusive sexual contact, and statutory rape, were 147 months, 27 months, and 30 months, respectively. And, the average sentence for all sexual abuse offenders was 191 months. Meanwhile, the average sentence for offenders convicted of production charges was 262 months imprisonment. Justin Hobbie's offense conduct, while abusive, did not involve hands-on sexual activity with a minor child, nor did it involve travel to have sex with a minor or statutory rape. None of this is to say that is conduct was not wrong – it was.

Another important fact about the nature and circumstances of the offense here is that no evidence exists showing that Justin Hobbie produced child pornography either for profit or

---

[2] That document can also be found at www.ussc.gov/research/quick-facts

8

dissemination. While he did, as he has admitted, elicit visual depictions of sexually explicit conduct from minors, he did not do so for a profit motive or to disseminate to others, and his conduct was not, as it is in some production cases, hands-on.

## II.     Section 3553 (a) (2) Factors

Section 3553(a)(2) concerns itself with the sentencing goals of specific deterrence, general deterrence, and the likelihood of recidivism.

At forty-two-years old, Justin Hobbie stands before this Court convicted of his first criminal offenses. He has been specifically deterred and punished for his offenses. His punishment began the day he was arrested. Since his arrest, Justin Hobbie has endured the harsh public scrutiny, shame, and ridicule that such charges bring. His personal reputation is ruined and he has lost his career, one that he loved and he pursued with a passion. He lost his marriage when his divorce was finalized approximately five months after his arrest. *See* PSR at ¶103. And, he has lost his children, who now reside in Pennsylvania and with whom he is unable to have any contact. *See* PSR at ¶¶104, 106.

As he stands before your Honor for Sentencing, Justin Hobbie is well aware of the statutory mandatory minimum sentence he faces, he has not seen or spoken with his two children for more than a year, and he does not know when he will next see or speak with them. Every day he thinks about the damage he has caused to them – the two most important people in his life. He also knows, as he stands before your Honor, the heartache and stress that he has caused his parents, who are now in their 70's, and he worries about the possibility that they may not be alive when he is released from prison. *See* PSR at ¶37.

Justin Hobbie's losses, which are immense, cannot be quantified and he has and will continue to be punished. A sentence of fifteen years imprisonment means that Justin Hobbie will

be in his mid-50's before he is able to resume his life, without a wife, without his career, and with virtually no finances. Rather, at that time he hopes to resume his life with simply the hope that he will be able to repair his relationships with his children.

For a number of reasons, the public does not require any protection from Justin Hobbie and he is not likely to recidivate. *See* Appendix C to the PSR, containing the Report of Norman J. Lesswing, Ph.D., dated February 2, 2020. ("Lesswing Report").

First, he has no prior criminal history and his former career, public service, and community engagement make it clear that Justin Hobbie is a person who cares what others think of him. He knows what he has done is wrong and he makes no excuses for his behavior. As many of the letters of support state, when given the chance, Justin Hobbie will avail himself of every opportunity he can to right this wrong.

Second, as discussed in the Lesswing Report, Justin Hobbie has already begun to develop significant insights into the problematic behavior at issue here and is amenable and likely to benefit significantly from treatment.

Third, as the Court knows, to the extent that any need to protect the community exists at all, Justin Hobbie will be placed on supervised release for a minimum of five years where his activities will be closely monitored and curtailed.

And finally, relying upon empirical evidence, the Court can consider Justin Hobbie's lack of criminal history as a very substantial factor in favor of a non-guideline sentence. Following a "multi-year study of recidivism," the Sentencing Commission found that "first offenders generally pose the lowest risk of recidivism." The Sentencing Commission cited these findings in connection with a Proposed Amendment to the Sentencing Guidelines regarding first offenders and alternatives to incarceration. This Amendment, which has not yet been adopted, "provide[s]

lower guideline ranges for 'first offenders' generally and increase[s] the availability of alternatives to incarceration for such offenders at the lower levels of the Sentencing Table (compared to otherwise similar offenders in Criminal History Category I)." The Sentencing Commission also proposed this Amendment to implement the Congressional directive in 28 U.S.C. § 994(j) "that alternatives to incarceration are generally appropriate for first offenders not convicted of a violent or otherwise serious offense." *See* 2017 Proposed Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, December 19, 2016, at p. 1. As Justin Hobbie is a "first offender," the Commission's proposed amendment, and the reasons underlying it, provides the Court with additional support for the imposition of a non-guideline sentence.[3]

The recently enacted "Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act," also known as the First Step Act, provides further support for a non-guideline sentence for Justin Hobbie. Among other provisions, the First Step Act amended subsection (f) of Title 18, United States Code, Section 3553, and, in doing so, broadened the existing safety valve. Additionally, the First Step Act's other provisions, including the lessening of certain mandatory minimums and its emphasis on recidivism reduction and educational programs for inmates, are based upon a recognition that longer terms of imprisonment do not necessarily act as a deterrent or have a deterrent effect.

For all of these reasons, fifteen years imprisonment of Justin Hobbie satisfies the goals of general and specific deterrence and is, by any measure, punishment.

### III. Section 3553(a)(3) Kinds of Sentences Available

The PSR sets forth the sentencing options available to the Court.

---

[3]Undersigned counsel understands that the offenses of conviction are serious offenses; nevertheless, the empirical evidence still speaks to the lack of repeat behavior by first offenders.

### IV.    Section 3553(a)(4) and (a)(5)–Advisory Guideline Range and Policy Statements

The *advisory* sentencing guidelines are *but one of several factors* in Section 3553(a), and are not an indication by themselves of a *reasonable* or *just* sentence. In addition to the reasons set forth above, the advisory sentencing guidelines in these types of cases merit extra scrutiny because although certain enhancements are technically applicable, many have a cumulative and duplicate effect as they increase and inflate the offense conduct based upon facts that are already accounted for as part of the offense conduct.

### V.    Section 3553 (a) (6) – Sentencing Disparities

Sentencing disparity is not an issue in this case.

### VI.    Section 3553 (a) (7) -- Restitution

Restitution shall be ordered in this case. *See* PSR ¶¶148-9. The parties have engaged in negotiations regarding an agreed-upon amount of restitution and although Justin Hobbie does not have the financial resources or ability to pay, he understands that he is obligated to do so. *See* PSR ¶132.

### CONCLUSION

It is respectfully requested that the Court sentence Justin Hobbie to the statutory mandatory minimum sentence of 15 years imprisonment. Justin Hobbie's conduct was clearly wrong. It has already cost him what matters most, which is to be involved in the lives of his two children. For at least as long as he is incarcerated, he will continue to be separated from them and when that incarceration is complete and he is on supervised release, he will have the daunting task of starting his life over.

For all of these reasons, it is respectfully submitted that the Court sentence Justin Hobbie to no more than fifteen years imprisonment.

Respectfully submitted,

Dated:  February 12, 2020

/s/ Kimberly M. Zimmer
**KIMBERLY M. ZIMMER**
Zimmer Law Office, PLLC
120 E. Washington Street, Suite 815
Syracuse, New York 13202
Bar Roll No.: 505346
(315) 422-9909

13